564 F.2d 1219
 Evelyn ELLIOTT and Benito Molina, Individually and on behalf
of all others similarly situated, Plaintiffs-Appellees,
v.
Caspar W. WEINBERGER, Individually and in his capacity as
Secretary, United States Department of Health, Education and
Welfare, and Sung Dai Seu, Individually and in his capacity
as Pacific Area Manager, Social Security Administration,
Department of Health, Education and Welfare, Defendants-Appellants.
Fannie BUFFINGTON and Frances Biner, Individually and on
behalf of all others similarly situated,
Plaintiffs-Appellees,
v.
Caspar W. WEINBERGER, Individually and in his capacity as
Secretary of the Department of Health, Education
and Welfare, Defendants-Appellants.
 Nos. 74-1611, 74-3118.
 United States Court of Appeals,
Ninth Circuit.
 July 1, 1977.
Rehearing and Rehearing In Banc Denied Dec. 15, 1977.
 
 1
 Robert E. Kopp and Robert S. Greenspan, argued, Civil Div., Dept. of Justice, Washington, D. C., for defendants-appellants.
 
 
 2
 Stanley E. Levin, argued, Paul D. Alston, Legal Aid Society of Hawaii, Honolulu, Hawaii, for Evelyn Elliott et al.
 
 
 3
 Jeff Spence, argued, Evergreen Legal Services, Seattle, Wash., for Fannie Buffington et al.
 
 
 4
 Before BROWNING and TRASK, Circuit Judges, and WILLIAMS*, District Judge.
 
 SPENCER WILLIAMS, District Judge:
 
 5
 These consolidated appeals by the Secretary of the Department of Health, Education and Welfare (hereinafter referred to as the "Secretary") challenge the judgments of two district courts requiring, inter alia, the Secretary to provide old-age and disabled social security beneficiaries the right to a hearing prior to the initiation of procedures to recoup monies paid to such beneficiaries allegedly in excess of their legal monthly entitlements. In both these class action suits plaintiffs-appellees assert that the procedures utilized by the Secretary in recouping excess payments denied them due process of law under the fifth amendment because their benefits were reduced or suspended without adequate notice of the reason for the recoupment, without adequate notice of their right to reconsideration, waiver, or partial adjustment of the Secretary's recoupment decision, and without affording them the opportunity to have a pre-recoupment hearing. Elliott v. Weinberger, 371 F.Supp. 960, 964 (D.Haw.1974); Buffington v. Weinberger, Civil No. 734-73C2 (W.D.Wash., Oct. 22, 1974). The district courts held that mandamus jurisdiction was established under 28 U.S.C. § 1361[1], and that the recoupment procedures violated the due process rights of the complaining recipients. In addition, the courts ordered that prior to recoupment the Secretary must give the recipients adequate notice of their right to request and be afforded a hearing. We are in substantial agreement with the rulings of the courts below that a prior oral hearing ought to be afforded recipients prior to recoupment of their monthly benefits when they claim a waiver. However, we do not believe that such a hearing is constitutionally compelled in straight reconsideration cases, in light of Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), unless the issues raised in a recipient's request for reconsideration of the Secretary's initial overpayment and recoupment determination are incapable of resolution upon written submission and/or documentary proof.
 
 The Statutory and Procedural Background
 
 6
 The Social Security Act vests the Secretary with the power to recover lost funds in the event overpayments are made to recipients of old-age or disability benefits. 42 U.S.C. § 404 provides in pertinent part:
 
 
 7
 (a) Whenever the Secretary finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery shall be made, under regulations prescribed by the Secretary, as follows:(1) With respect to payment to a person of more than the correct amount, the Secretary shall decrease any payment under this subchapter to which such overpaid person is entitled, or shall require such overpaid person or his estate to refund the amount in excess of the correct amount, or shall decrease any payment under this subchapter payable to his estate or to any other person on the basis of the wages and self-employment income which were the basis of the payments to such overpaid person, or shall apply any combination of the foregoing. . . .
 
 
 8
 (b) In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.
 
 
 9
 The challenged government procedures are as follows: As of January 1, 1974[2], all recipients subject to recoupment receive form letters which set forth the reasons for the proposed recoupment, the availability of reconsideration (when a recipient asks for reconsideration, the correctness of the overpayment determination itself is being challenged), the condition for waiver (when a beneficiary requests that his overpayment be waived, he is, in effect, conceding the debt but asking that it be forgiven or reduced[3]), and the need to consult the local Administration office within thirty days if they wish to complain.[4]
 
 
 10
 The initial overpayment and recoupment notice sent to beneficiaries makes no mention of the forms needed for reconsideration or waiver, nor sets forth information about how to complete them. However, the beneficiary may obtain review of his case by sending a letter stating his reasons for opposing the overpayment determination or seeking a waiver.
 
 
 11
 It is the Secretary's policy to immediately defer recoupment action upon receipt of a request for reconsideration or waiver. Claims Manual § 5503.5. Deferral of recoupment beyond thirty days after the date of initial notice, however, lies completely within the discretion of the Administration.
 
 
 12
 If, after review of the information supplied by the beneficiary, the Secretary adheres to his initial determination that recoupment is appropriate, he notifies the beneficiary to this effect and resumes the withholding of benefits to satisfy the overpayment. If dissatisfied with this decision, the beneficiary may request an administrative hearing de novo, in which the beneficiary is provided an opportunity to present oral testimony and to cross-examine witnesses before an independent hearing examiner. 20 C.F.R. § 404.928-.929. However, recoupment is not suspended pending the outcome of this de novo hearing. The beneficiary is further entitled to appeal the hearing examiner's determination to the Appeals Council of the Social Security Administration (20 C.F.R. § 404.945), and to judicial review of the Appeals Council's decision pursuant to 42 U.S.C. § 405(g).
 
 The Facts
 
 13
 In Elliott, plaintiffs Silva, Ortiz and Vaquilar (subclass one) were determined to have been overpaid by the Secretary based upon their own annual earnings reports. They all received the form letter indicating the reasons for the overpayment determination, the specific amount overpaid and the amount by which the recipient's subsequent benefit checks would be reduced or suspended altogether. These plaintiffs were additionally apprised of the possibility of reconsideration and the conditions of waiver. All of them contacted the Administration's local offices within thirty days of receipt of the letter. At the time the Elliott court rendered its decision, the Secretary had completed recoupment against two of these plaintiffs, but as to the other had deferred recoupment pending disposition of the suit.
 
 
 14
 Plaintiffs Elliott, Gaines and Yamasaki (subclass two) received notices more than thirty days before recoupment was to begin, which disclosed information similar to that contained in the notices sent to subclass one plaintiffs.[5] Plaintiff Elliott was notified that the overpayment determination was predicated upon "her receipt of both retirement and disability benefits when she was entitled to only disability benefits." Elliott, supra at 965. "Duplicate payments" was the reason given Gaines for his overpayment. Plaintiff Yamasaki was told that "a processing error" caused an overpayment to be sent to her. All subclass two plaintiffs contacted their district office within thirty days after receipt of the overpayment notice. Recoupment against Elliott and Gaines was deferred pending resolution of this case, whereas recoupment against Yamasaki has been completed. Elliott, supra at 965-66.
 
 
 15
 The Buffington plaintiffs resemble subclass one in Elliott. Both Buffington and Biner are recipients of Social Security old-age benefits. Based on "annual earnings reports" submitted by plaintiffs, the Secretary determined that they had received overpayments of benefits, and consequently sought to recoup the overpayments from future benefits.[6]
 
 
 16
 In 1973 Mrs. Buffington was entitled in her own right to old-age Social Security benefits of $80.50 per month. Based upon her husband's earnings record, she was also entitled to wife's benefits of $15.70 a month, resulting in total monthly benefits of $96.20 (she actually was receiving $89.90 per month due to monthly Medicare deductions of $6.30). In September 1973, plaintiff's husband filed an annual earnings report which showed that he had received earnings in 1972 which exceeded the statutory limit. Accordingly, the Secretary determined Mrs. Buffington to have been in receipt of a total overpayment of $78.60. Notice of the overpayment was sent to Mrs. Buffington on October 3, 1973, indicating that the overpayment would be withheld from her next benefit check. In early November she received a Social Security check in the amount of $11.30. Mrs. Buffington subsequently submitted a request for reconsideration to the local administrative office. On July 24, 1974 her request was denied and the original overpayment determination was sustained.
 
 
 17
 Mrs. Biner was found entitled to old-age social security benefits in November 1970. In November 1972, however, she notified her claims representative that she intended to cease working in December 1972.[7] The Social Security Administration in 1972 sent Mrs. Biner three checks in a total amount of $2,216.20, representing benefits for all of 1972.[8] However, the Administration subsequently discovered as a result of a cross check with her former employer, that she had earned income in excess of the statutory amount for 1972. Thereupon, the Secretary requested Mrs. Biner to file an annual earnings report, which she submitted on August 28, 1973; and it was upon this basis that the overpayment was determined.
 
 
 18
 In the latter part of September 1973, Mrs. Biner was notified that she had been overpaid, and, consequently, that her benefits would be suspended until the entire amount had been recouped. She was also supplied with a facsimile of the form letter referred to earlier. She received no benefit checks for October 1973. In mid-October 1973 Mrs. Biner received a letter from the Administration containing "waiver" forms which she was instructed to fill out and return to the district office if she wished to do so. Mrs. Biner completed the forms and mailed them to the local office. However, submission of this request for waiver consideration did not halt recoupment proceedings. Moreover, on November 19, 1973 Mrs. Biner was informed that she was at fault in retaining the checks and, consequently, no waiver would be permitted. She was also informed that the original suspension of her benefits had been adjusted so that $50.00 per month would be withheld from her regular benefit payments.
 
 
 19
 During the latter part of 1973 Mrs. Biner twice requested reconsideration of the Secretary's overpayment decision. Again, recoupment was not halted. On April 8, 1974, however, the Secretary adhered to his initial determination that recoupment was appropriate, and continued to deduct amounts from Mrs. Biner's subsequent benefit checks. In late May or early June of that year, Mrs. Biner requested and was granted on October 21, 1974 an administrative hearing to review the propriety of the Secretary's recoupment decision. After oral hearings, the administrative law judge sustained the Secretary's decision.
 
 
 20
 Mandamus Jurisdiction Under 28 U.S.C. § 1361
 
 
 21
 The Secretary contends that the district courts erred in assuming jurisdiction over these cases pursuant to the federal mandamus statute, 28 U.S.C. § 1361. We disagree. For the reasons discussed below, we find this to be an appropriate case for mandamus jurisdiction.8a
 
 
 22
 In Knuckles v. Weinberger, 511 F.2d 1221 (9th Cir. 1975) and in Workman v. Mitchell, 502 F.2d 1201 (9th Cir. 1974), this Circuit has held that mandamus lies both to compel compliance with due process requirements and to provide the court jurisdiction "to declare the due process requirements applicable to (the challenged) proceedings." Workman, supra, at 1206. Mandamus has traditionally been viewed as appropriate to compel officials to comply with the law when "the claim is clear and certain and the duty of the officer is ministerial and so plainly prescribed as to be free from doubt." Jarrett v. Resor, 426 F.2d 213, 216 (9th Cir. 1970). There is no conflict between the Knuckles rule, which we re-affirm today, and the traditional limited scope of mandamus.[9]
 
 
 23
 The fact that the district courts were required to analyze the Secretary's procedures in light of the fifth amendment in order to rule on the appropriate form of notice and hearing, does not render the Secretary's duty so unclear as to be beyond the reach of mandamus. "(O)nce the court interprets the law, the defendant's duty will be clear; the court is not telling the defendant how to exercise his discretion." Knuckles, supra, at 1222.
 
 
 24
 Thus the trial courts properly found jurisdiction. Here we are concerned with the duty of the Secretary to provide certain minimum due process notice and hearing opportunities to Social Security recipients subject to recoupment. Frost v. Weinberger, 515 F.2d 57, 62 (2d Cir. 1975), cert. denied, 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976); Martinez v. Richardson, 472 F.2d 1121, 1125-26 & n. 12 (10th Cir. 1973). It is a strict fifth amendment issue, and the question of discretion does not arise. The Secretary has either met his constitutional duty to provide a certain minimum, or he has not. He has no discretion to provide less than that constitutionally required.
 
 
 25
 Nor are the present suits precluded by 42 U.S.C. § 405(h) which controls judicial actions to recover benefits. Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) interprets § 405(h) to require that claims for benefits be asserted only through 42 U.S.C. § 405(g). The instant suits are quite different. They assert a constitutional right to due process notice and hearing when alleged overpayments are recouped. They are not claims for benefits. Nor would granting the relief sought result in an entitlement to benefits. The distinction between due process questions divorced from a claim for benefits and questions related to the merits of a benefits claim is a significant one, requiring considerably different treatment by the courts.[10] See Eldridge, supra, 424 U.S. at 329-332, 96 S.Ct. 893.
 
 
 26
 Unlike benefits cases wherein the purpose of the administrative process is served by requiring all actions to proceed through administrative review before appeal to the courts, questions of due process benefit little from administrative exhaustion. There is a need for prompt resolution of such questions, Eldridge, supra, 424 U.S. at 330, 96 S.Ct. 893, and they are typically beyond the competence of the Secretary to decide. On the contrary, the development and fine-tuning of notions of due process is peculiarly the province of the courts.
 
 
 27
 Thus, while the language of § 405(h) precludes "judicial action to recover on any claim arising under this subsection," (emphasis added) it simply does not address the question of due process. Unless the question sought to be litigated is within the express language of the limiting statute, there is no basis for concluding that Congress sought to limit or preclude judicial review. Salfi, supra, 422 U.S. at 761-762, 95 S.Ct. 2457.[11]
 
 
 28
 Nor does any clear and convincing evidence exist that Congress intended to limit mandamus jurisdiction at all by § 405(h). Section 1361 did not exist when § 405(h) was enacted in 1935 precluding jurisdiction under section 41 of Title 28 for recovery of Social Security claims.[12] In at least one other instance where Congress intended a statutory limitation to encompass § 1361, a specific amendment to the limiting statute was made.12a
 
 The Class Action
 
 29
 The district court in Elliott certified two subclasses of Hawaiian residents: 1) old-age beneficiaries subject to recoupment as a result of their own annual income reports, and 2) old-age and disability beneficiaries subject to recoupment for all other reasons. Each subclass was represented by named plaintiffs. The court ordered (a) the posting of a notice in every local social security office; (b) the publishing of an advertisement in a non-legal section of two newspapers of general circulation; and (c) the inclusion of a notice of the suit in every letter from the Administration informing the recipients of its overpayment determination. The notice informed the members of the class of the pendency of the suit, of their right to intervene, and of their right to question the adequacy of their representation. The government takes no issue with the Elliott court's class certification order or with the adequacy of the notice provided.
 
 
 30
 The Buffington court certified the two named plaintiffs as representatives of a nation-wide class of persons eligible for social security old-age and survivors' benefits under 42 U.S.C. § 402 "whose benefits have been or will be reduced or otherwise adjusted without prior notice and opportunity for a hearing." The court excepted from the class residents of Hawaii and the Eastern District of Pennsylvania and those individuals involved in other litigation challenging the Secretary's procedures in recouping benefits without prior notice and hearing. No notice was provided members of the certified class.
 
 
 31
 The Secretary contends that the failure to provide notice to the class was a violation of due process and that the class order must be declared invalid, reducing the effect of the judgment solely to the two individuals named as plaintiffs. The Secretary further argues that the district court abused its discretion in certifying a nation-wide class. We disagree.
 
 
 32
 There is little doubt that the district court's certification order satisfied the terms of Fed.Rule of Civ.Proc., Rule 23(c)(1) and (3). Furthermore, contrary to the Secretary's suggestion, this action is plainly of the type described in Rule 23(b)(2), not 23(b)(3). Although plaintiffs sought recovery of monies recouped from their monthly benefit checks, their primary purpose in bringing this action is to enjoin the Secretary from recouping such sums without providing social security beneficiaries a preceding hearing. In short, pecuniary recovery is purely incidental to this suit's principal purpose, and consequently this action is properly certifiable under 23(b)(2). Robinson v. Lorillard Corp., 444 F.2d 791 (4th Cir. 1971).12b In any event, the Buffington court's judgment did not award plaintiffs damages.
 
 
 33
 The Secretary contends that the Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1971) notice requirement should be extended to cover all class actions, including (b)(2) class actions. However, even the Eisen Court acknowledged that the notice requirements of subdivision (c)(2) are inapplicable to (b)(2) class actions. Id. at 177 n.14, 94 S.Ct. 2140. Rather, Rule 23(d)(2) operates to make notice discretionary with the court in (b)(2) actions. The weight of authority supports the interpretation that due process does not require notice in every (b)(2) class action.[13] Only when necessary to provide class members an opportunity to signify whether representation by named plaintiffs is fair and adequate or to intervene to present additional claims or to otherwise come into the action to, for example, submit views as amici curiae, does due process require the direction of some sort of notice to absent members of a (b)(2) class. In the instant case no such special circumstances exist to impel us to overturn the Buffington court's decision not to provide notice.
 
 
 34
 Plaintiffs here are represented by skilled and experienced counsel. Their record here and at the district court level is testimony to this commendation. When, as here, absent members' interests are adequately assured of being represented, no significant factual dispute is in need of resolution, the only issues raised are constitutional, and there is no serious question as to the competency of counsel, notice to the class serves no apparent purposes. Lynch v. Household Fin. Corp., 360 F.Supp. 720 (D.Conn.1973); Woodward v. Rogers, 344 F.Supp. 974, at 980 n.10 (D.D.C.1972). The presentation of additional individual claims would have complicated the suit and protracted it to the detriment of the class as a whole. The named plaintiffs' claims are typical of the class, and additional plaintiffs are unnecessary. The constitutional issues involved in the suit have been exhaustively briefed by counsel, thus rendering additional supplementation by absent members as amici curiae superfluous, Watson v. Branch County Bank, 380 F.Supp. 945, 960 (W.D.Mich.1974). For all intents and purposes, the class members of the instant class have received their functional equivalent to a day in court.[14]
 
 
 35
 The Secretary's claim that the Buffington court abused its discretion in certifying a nation-wide class is similarly unpersuasive. In reviewing the designation of a class by the trial judge the appellate court should allow the broadest discretion. City of New York v. International Pipe & Ceramics Corp., 410 F.2d 295 (2d Cir. 1969). Furthermore, nothing in Rule 23 indicates that a class should not be designated because it is too large. Certification of a national class action is not unknown in the federal courts. See Woodward v. Rogers, supra. The Secretary does not cite, nor can we find, any authority which supports his rather novel theory limiting (b)(2) class actions because of their numerosity and manageability problems. By its terms, Rule 23 makes manageability an issue important only in determining the propriety of certifying an action as a (b)(3), not a (b)(2), class action. There are simply no manageability problems in these suits.
 
 
 36
 In short, the Buffington suit strikes us as the classic type of action envisioned by the drafters of Rule 23 to be brought under subdivision (b)(2). The Secretary has acted on grounds generally applicable to all members of the class and final injunctive and declaratory relief with respect to the whole class is appropriate. It would be a practical absurdity were the Secretary to provide the due process safeguards enunciated herein to the exclusion of all save the named plaintiffs. Multiplicity of actions based on the same constitutional claims advanced here would inevitably result. Obviating such unnecessary duplication is the very purpose for which Rule 23(b)(2) was designed. Maintenance of the instant case as a class action is not only proper, but it also will effectuate the interests both of judicial administration and of justice.
 
 The Requirements of Due Process
 
 37
 Social Security beneficiaries whose old-age or disability payments are subject to suspension or reduction under the Secretary's recoupment procedures have a right to due process. Plaintiffs' interest in their monthly benefits amounts to a statutory entitlement constituting a property interest protected under the due process clause of the fifth amendment. Mathews v. Eldridge, 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); Goss v. Lopez, 419 U.S. 565, 573, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972);42 U.S.C. § 401 et seq.[15] A suspension or reduction in old-age or disability benefits imposed by a recoupment is not a de minimis deprivation outside the protection of due process. See Goss, supra (wherein the Court found a 10-day suspension from school not to be de minimis). Therefore, they may be deprived of their full benefits only through procedures according them due process of law.
 
 
 38
 More difficult, however, is determining the form of process to which plaintiffs are due. The Supreme Court set out a three part test for determining the specific dictates of due process in Mathews v. Eldridge, supra, 424 U.S. at 335, 96 S.Ct. at 903;
 
 
 39
 (I)dentification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. See, e. g., Goldberg v. Kelly, supra, 397 U.S. at 263-271, 90 S.Ct. (1011), 1018-1022.
 
 
 40
 Our analysis must apply the foregoing test to the facts of the instant cases, guided by the factual characteristics of welfare terminations, Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), and disability insurance terminations, Eldridge, supra.
 
 I. The Private Interest
 
 41
 As in both Goldberg and Eldridge the plaintiffs' sole interest is in the uninterrupted receipt of benefits pending final administrative decision on his claim. Eldridge, supra, 424 U.S. at 340, 96 S.Ct. 893. However, as Eldridge indicated, the strength of the interest in the receipt of benefits is a key factor in determining whether a prior oral hearing is necessary. Eldridge found that the interest of a disability insurance recipient in his benefits is less strong than that of the Goldberg welfare recipient. The Court reasoned that whereas welfare is the last step before complete destitution, disability benefits are not, since a terminated disability recipient who is impoverished could resort to welfare. Therefore, the disability recipient's interest requires less rigorous due process protections, since the potential deprivation is not so extreme. Eldridge also based its conclusion on the fact that the disability insurance program is not need-based, so erroneous termination would not necessarily cause financial disaster. Hence, the Court in Eldridge found that the personal interest of disability insurance recipients did not in itself invoke the need for a pre-termination hearing.
 
 
 42
 We find that the strength of the interest of the plaintiffs in the present cases lies somewhere between Eldridge and Goldberg. Although the old-age and survivors program is partially need-based,[16] the victims of erroneous recoupment generally can resort to welfare if in financial need.[17] Standing alone, this falls short of compelling an oral pre-recoupment hearing.
 
 II. Risk of Erroneous Deprivation
 
 43
 The next factor to be considered is "the fairness and reliability of the existing pre(recoupment) procedures, and the probable value, if any, of additional procedural safeguards." Eldridge, supra, 424 U.S. at 343, 96 S.Ct. at 907. In analyzing the risk of erroneous deprivation of the private interest caused by the Secretary's recoupment procedure we must look at the type of question the procedure is required to answer. There are two separate ways to dispute recoupment: reconsideration and waiver. Each involves different types of questions. Due process requires a procedure which provides notice and an "effective means for the recipient to communicate his case to the decisionmaker." Eldridge, supra, 424 U.S. at 345, 96 S.Ct. at 907; Goldberg, supra, 397 U.S. at 269, 90 S.Ct. 1011.
 
 A. Reconsideration
 
 44
 A reconsideration request addresses the question of whether an overpayment actually occurred. The reconsideration determinations here involve questions which, like the questions in Eldridge, are well suited to resolution by documentary proof, e. g., arithmetic computations when amounts are in controversy, and cancelled checks when the receipt of a payment is in dispute. Because written submissions are adequate to effectively communicate these matters, there is no undue risk of erroneous deprivation caused by the present procedures. Therefore, Eldridge dictates that the reconsideration claimants here are not constitutionally entitled to a prior oral hearing.[18]
 
 
 45
 We decline however to rule that reconsideration requests would never require prior oral hearings, for it is conceivable that cases may arise in which the credibility of the claimant may be determinative of the outcome. If a reconsideration claim raises such an issue, the claimant should be entitled to an oral pre-recoupment hearing.B. Waiver
 
 
 46
 Section 404(b) requires the Secretary to waive recoupment on request of a claimant who is without fault in the overpayment if the recoupment will defeat the purpose of the subchapter or be against equity and good conscience.
 
 
 47
 The questions raised in a waiver determination are fault, financial dependence, and detrimental reliance. These are significantly different from those faced in the disability insurance termination in Eldridge, and more closely resemble those addressed in Goldberg.
 
 
 48
 The question to be answered in a disability insurance hearing is whether the worker is unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ." The impairment claimed must be demonstrable by "medically acceptable clinical and laboratory diagnostic techniques" Eldridge, supra, 424 U.S. at 343, 96 S.Ct. at 907.
 
 
 49
 Furthermore, the pre-termination procedures in the disability insurance termination cases consist of extensive fact-finding aimed at establishing the medical condition of the claimant by relatively objective evidence. As the Supreme Court emphasized in Eldridge, the test for continued eligibility for disability benefits hinges on a medical assessment of the worker's physical or mental condition, which "(i)s a more sharply focused and easily documented decision than the typical determination of welfare entitlement." Eldridge, supra, 424 U.S. at 343, 96 S.Ct. at 907.
 
 
 50
 Finally, the sources of such information are typically able to communicate effectively through written documents, and the information to be conveyed is more amenable to written than to oral presentation in disability cases. Id., at 345, 96 S.Ct. 893. The Court in Eldridge placed great weight on the fact that disability determinations turned largely on "routine, standard, and unbiased medical reports by physician specialists." Id., at 344, 96 S.Ct. at 907, rather than on questions of credibility and veracity, which render written submissions "a wholly unsatisfactory basis for decision." Id., at 344, 96 S.Ct. at 907; Goldberg, supra, 397 U.S. at 269, 90 S.Ct. 1011.
 
 
 51
 In waiver determinations the trier of fact must address the question of fault, which rests peculiarly upon the credibility of the claimant and the other witnesses, and can not be ascertained solely from written submissions. As noted recently in Pence v. Kleppe, 529 F.2d 135, 143 (9th Cir. 1976), "written documents do not allow the trier of fact to assess the demeanor and attitude of the various witnesses and thereby test their credibility." Unlike a disability determination, a decision of whether a person is at fault requires that the decisionmaker see the person, size up the testimony, and have an opportunity to question the individual about the circumstances involved in his claimed failure to recognize that an overpayment was made.
 
 
 52
 In determining fault in a waiver claim, the decisionmaker is required to evaluate the claimant's story in light of "all pertinent circumstances, including his age, intelligence, education, and physical and mental condition." 20 C.F.R. § 404.507. It is not plausible to expect the decisionmaker to make a judicious evaluation of the claimant's personal characteristics and circumstances merely from the file and submitted papers.
 
 
 53
 The fact situations in which the fault issue arises are varied and can be complex. An inquiry into the state of mind of the claimant is required to determine whether the events posited in 20 C.F.R. § 404.510 have occurred. Findings under this regulation hinge on such matters as reasonable belief, reliance, unawareness, lack of knowledge, and failure to understand.
 
 
 54
 In addition, § 404.511 states that an individual who has shown lack of good faith or has failed to exercise a high degree of care will not be "without fault." The care component of this determination is tempered by the recognition that the degree of care required may vary with the complexity of the circumstances by the capacity of the payee to realize that he is being overpaid, and by the requirement that the "variances in personal circumstances and situations of individual payees are to be considered in determining whether the necessary degree of care has been exercised . . . ."
 
 
 55
 "The objective (of due process) is to ensure that the agency will acquire the information it should have in a manner fairly calculated to illuminate the issues for reasoned decision making." City of Santa Clara, Cal. v. Kleppe, 418 F.Supp. 1243, 1260 (N.D.Cal. 1976); cf. Pence v. Kleppe, 529 F.2d 135, 140-143 (9th Cir. 1976). As the facts of plaintiff Biner's case graphically illustrate, these regulations can not be properly administered without an oral hearing. While the Administration conceded that Mrs. Biner may not have been at fault in receiving the overpayment checks in 1972, it nonetheless believed that the letter enclosed with the first check sent to Biner and the fact that she received checks while she was employed put her on notice that continued retention of those checks was improper and precluded a finding on its part that she was "without fault" within the meaning of the Social Security Act. However, whether Biner knew that she was not entitled to these checks seems to be a matter difficult to resolve without hearing her side of the story. Finding fault on the basis of the ambiguous letter enclosed with the first overpayment check sent her, without giving her an opportunity to explain in person what she thought it meant, is simply inadequate.
 
 
 56
 Emerging from our analysis of the regulations under which § 404(b) is administered is the conclusion that the decision which must be reached in a fault determination is highly subjective, highly individualized, and highly dependent on the interaction between the intentions and state of mind of the claimant and the peculiar circumstances of his situation.[19]
 
 
 57
 Thus it is clear that the risk of erroneous deprivation is greatly increased by the present system which does not provide an adequate opportunity for the claimant to communicate his case to the decisionmaker on the issue of fault. Likewise, it is clear that an oral prerecoupment hearing would provide such an opportunity for resolving fault questions.
 
 
 58
 The waiver determination is a two-step process. If the recipient establishes his lack of fault in receiving and retaining the overpayment, the Secretary must then determine whether recoupment would "defeat the purpose of the subchapter or be against equity and good conscience." 42 U.S.C. § 404(b).
 
 
 59
 The meaning of the phrase "defeat the purpose of this subchapter" is found in § 404.508 which defines it to mean depriving a person of income required for ordinary and necessary living expenses.
 
 
 60
 Generally, evidence of living expenses can be adequately presented by written and documentary submissions. Check stubs, copies of budgets, estimates of expenses, and the like can be communicated well in this form.
 
 
 61
 However, there is one exception which may come into play when the recipient claims financial dependence on the benefits. As discussed above, Eldridge did not require an oral hearing in light of financial need, on the assumption that one could go on welfare. As long as the termination or reduction is from a program which is not the "last step" then the personal interest standing alone can not compel a prior oral hearing. That is the general rule. But a situation may exist where a claimant is dependent on the Social Security benefits for existence and welfare is not available despite that person's severe financial need. In that situation only, Social Security becomes the "last step," and the strength of the personal interest becomes identical with Goldberg.
 
 
 62
 The other component of waiver is "equity and good conscience." It involves those situations where a person has relied on a payment or notice of payment, and has relinquished a valuable right or changed position detrimentally as a result. Financial need is irrelevant to this component. 20 C.F.R. § 404.509. Deciding whether the recipient has detrimentally relied on an overpayment resembles the fault determination. The decisionmaker will have to answer the same types of questions as in the fault context: e. g., state of mind, credibility, and whether under the circumstances the claimant would have changed position anyway without the overpayment. Purely documentary submissions are inadequate to show what motivation or set of operational facts the claimant considered in performing an act or refraining therefrom. Nor can they address the question of causality which a claim of reliance implies.
 
 
 63
 The above analysis indicates that most of the factors involved in a waiver determination are not capable of resolution by written submissions. Therefore, the Secretary's current procedure for handling waivers creates an undue likelihood of erroneous deprivation, which could be obviated by pre-recoupment oral hearings.
 
 III. The Government Interest
 
 64
 The final factor to be assessed is the public interest, which includes the administrative burdens associated with requiring an oral hearing prior to recoupment in waiver cases.
 
 
 65
 There is an understandable dispute as to the actual burden to be borne by the Secretary under a requirement of pre-recoupment oral hearings for waiver requests. No one can say with complete authority how many additional hearings will take place under the guidelines we set down today. A review of the record indicates on the negative side that there will be a modest increase in burden. On the positive side, however, it appears fairly certain that hearings should significantly reduce errors in the decision making process.
 
 
 66
 The major fiscal difficulty envisioned by the Secretary is the likelihood that the availability of pre-recoupment hearings will result in the filing of a far greater number of requests for reconsideration or waiver.
 
 
 67
 During oral argument counsel for the Secretary cited statistics that show that the number of hearings on termination of welfare benefits has increased from 19,000 per year to 68,000 per year since the decision of the Supreme Court in Goldberg. Without further clarification, these statistics are of little value. Cf., Eldridge, supra, 424 U.S. at 346, 96 S.Ct. 893. They do not disclose what change, if any, has taken place in the success rate of welfare beneficiaries who receive a hearing. If the effect of Goldberg were to cause the filing of a large number of frivolous requests for hearings by people seeking to delay termination, there might be reason to question the wisdom of Goldberg. But if, in fact, the percentage of successful contests has remained constant or declined only slightly, then Goldberg has resulted in a larger number of correct determinations of the issue of whether welfare benefits should be terminated, and, as such, Goldberg has benefited rather than burdened the system.
 
 
 68
 If requiring pre-recoupment hearings would result in the filing of frivolous requests in order to delay recoupment, the present procedure should also encourage frivolous written requests for reconsideration or waiver. This is so because the present practice of the Secretary is to delay recoupment until after a determination by the Department that the request should not be granted.
 
 
 69
 The findings of fact by the courts below strengthen our belief that the increased burden will be minimal. First, very few of the recoupment decisions of the Secretary are challenged in any way. Claimants object to less than 1% of the recoupments. Second, when they do object, a high percentage convince the Secretary to reverse himself. Almost three-fourths of the claimants who contest their recoupment win a favorable decision somewhere along the line, and more than one-third of those who reach the post-termination hearing succeed at that stage. Elliott v. Weinberger, 371 F.Supp. 960, at 967.[20]
 
 
 70
 There has been no showing that the percentage of challenges will increase substantially or that the number of hearings will rise inordinately. There may be more requests for waiver and reconsideration when the Secretary's notices are redesigned to provide the information required to fulfill the due process notice requirements noted elsewhere in this opinion. There will also be some increase in hearings reflecting those claimants who would have given up or died before the post-recoupment hearings which under the current procedures are held almost one year after the fact.
 
 
 71
 Furthermore, the financial burden the Government bears in recoupment cases is substantially lighter than in a termination case. In the latter, as noted in Eldridge, supra, 424 U.S. at 348, 96 S.Ct. 893, the Government is forced to continue paying benefits to someone who not only may not be eligible for them, but who in all likelihood will be unable to repay them and may be judgment-proof in the event that he is found ineligible for the amounts paid during the review and termination process.
 
 
 72
 In the instant case we merely require the Government to exercise a little forebearance before taking money from the claimants via recoupment. There will be few if any situations when payments will be made to ineligible persons during the course of the review. Generally, the claimant's eligibility is not at issue, the only question being whether, or when and how, his payments should be subject to temporary recoupment deductions.
 
 The Oral Pre-Recoupment Hearing
 
 73
 Applying the Eldridge three element balancing test to the instant cases we conclude that the reconsideration claimants here are not constitutionally entitled to a prior oral hearing.
 
 
 74
 We conclude from applying the Eldridge test to the waiver cases that § 404(b) determinations require an oral pre-recoupment hearing. The questions to be asked and the factors to be considered in a § 404(b) waiver determination can not be adequately handled by written submissions.[21]
 
 
 75
 The hearing need not take the form of a judicial or quasi-judicial trial. In accordance with Goldberg v. Kelly, supra, 397 U.S. at 267-71, 90 S.Ct. 1011, the claimant should be afforded the following rights:
 
 
 76
 1. to present his case orally and to submit evidence with witnesses or documents;
 
 
 77
 2. to cross-examine adverse witnesses;
 
 
 78
 3. to be represented by counsel;
 
 
 79
 4. to have an impartial hearing officer;
 
 
 80
 5. to receive a statement written by the hearing officer setting forth his decision and the reasons and evidence in support of it; and
 
 
 81
 6. to receive adequate notice.
 
 Notice
 
 82
 Social Security recipients have a due process right to receive adequate notice of recoupment, plainly and clearly communicated. The notice should inform the recipient of the basis for the recoupment, the procedural rights available to the recipient, and the consequences if the recipient exercises those rights. Under present regulations, a notice informing a recipient of these matters might state:
 
 
 83
 1. the alleged overpayment and the reason for overpayment;[22]
 
 
 84
 2. the recipient's right to request reconsideration or waiver, or both, and the nature of each;[23]
 
 
 85
 3. that the recipient must request reconsideration or waiver in writing within thirty days of receipt of notice in order to exercise these rights;
 
 
 86
 4. that if waiver is requested, the recipient has a right to a pre-recoupment hearing (as set forth in this opinion);
 
 
 87
 5. that recoupment will begin unless reconsideration or waiver is requested, in which case recoupment will not begin until the request has been finally disposed of by way of the required review procedure;
 
 
 88
 6. that the Administration will send appropriate forms upon receipt of a request for reconsideration or waiver, and that the local office will assist the recipient in completing and submitting the forms upon request;
 
 
 89
 7. any other administrative relief available, and an explanation of how to request it.
 
 
 90
 The judgments of the district courts are affirmed in part and reversed in part, and the cases are remanded.
 
 
 
 *
 Honorable Spencer Williams, United States District Judge, Northern District of California, sitting by designation
 
 
 [1]
 In Elliott v. Weinberger, plaintiffs asserted that jurisdiction additionally existed under 28 U.S.C. § 1331(a) and 5 U.S.C. § 701 et seq. The court in Elliott, however, expressly declined to decide whether jurisdiction could be properly predicated upon these sections, but noted in passing that support existed for either jurisdictional base. In Buffington v. Weinberger, the court found both § 1361 and § 701 et seq. to furnish the necessary jurisdictional basis. The Supreme Court recently held in Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) that § 10 of the Administrative Procedure Act, 5 U.S.C. §§ 701-706 does not provide an independent basis for jurisdiction
 
 
 [2]
 At the time these suits were filed, those beneficiaries whose overpayments were determined from their "annual earnings reports" were not entitled to advance notice of recoupment. Rather, recoupment began immediately, subject to later consideration of the beneficiary's request for reconsideration or waiver. Plaintiffs Silva, Ortiz, Vaquilar, Biner and Buffington all had recoupment procedures initiated against them on the basis of earnings reports filed with the Secretary. Following January 1, 1974 it has been the Secretary's practice to provide all such beneficiaries the same pre-recoupment notice as in other overpayment cases
 
 
 [3]
 It should be logically possible to request both reconsideration and waiver in the alternative. A claimant could dispute that overpayment occurred and claim further that even if an overpayment did occur, he was not at fault
 
 
 [4]
 Social Security Claims Manual § 5503(a) requires the Secretary to inform overpaid beneficiaries of their "right to request reconsideration" and of the applicable waiver provisions of the Social Security Act. Contrary to the Secretary's contention, the form letter notice does not apprise a beneficiary of his "right" to waiver consideration. Nor does the Claims Manual require such disclosure. Only the "provisions" of waiver need be revealed. Even as to reconsideration, the form letter fails to make clear that such re-appraisal is a matter of right rather than a mere possibility
 
 
 [5]
 For a discussion of the major difference see note 2 supra
 
 
 [6]
 Pursuant to 42 U.S.C. § 403(b), deductions from Social Security benefits must be made when a beneficiary's earnings exceed the amount prescribed by statute. To determine whether deductions are appropriate in any given case, a beneficiary who earns more than the statutory maximum is required to file an "annual earnings report" which sets forth the amount of wages earned by the beneficiary during the preceding year. The Social Security application form, and certain pamphlets sent to beneficiaries, advise the claimants of the filing requirement
 
 
 [7]
 There is considerable dispute as to whether plaintiff Biner also informed the district office that her earnings would not exceed the statutory maximum in 1972. The Secretary contends that plaintiff represented to her claims representative that she would not have earnings above $1,680 for the year 1972, and that based upon this representation the Secretary issued Mrs. Biner $2,216.20 in excess benefit checks. Plaintiff Biner, on the other hand, claims that her purpose in contacting the local office was to ensure that she would begin receiving her benefits promptly after her retirement in December 1972, and, as such, would only have had cause to inform the office of the date of her retirement, not the amount of income she earned during 1972. In any event, she exceeded the earnings maximum in 1972 the year for which she received the benefit checks at issue here
 
 
 [8]
 It is unclear whether Mrs. Biner knew or should have had reason to know that these checks represented benefit payments for the year 1972. The Secretary contends that enclosed with at least the first check was a letter which indicated that the check was intended as back payment for 1972. Excerpts of this letter which are quoted in the affidavit of the Deputy Director of the Bureau of Retirement and Survivors Insurance of the Social Security Administration do not bear this out. On the other hand, Mrs. Biner asserts that no explanation whatsoever was furnished by the Administration articulating the purpose in its sending this check
 8a We note that § 405(g) jurisdiction is also available for the named plaintiffs. Mathews v. Eldridge, 424 U.S. 319, 328-32, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). It was not addressed below, presumably because, prior to Eldridge, it was thought to be unavailable. There are some potential problems with the adequacy of § 405(g) jurisdiction in cases of this sort, which lead us to the conclusion that mandamus jurisdiction remains appropriate. It is not entirely clear that relief for the class is available under § 405(g) jurisdiction, because of the exhaustion problems for class members posed by Weinberger v. Salfi, 422 U.S. 749, 755, 764, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). Furthermore, there is some uncertainty whether district courts may issue injunctions applicable to a class under § 405(g) jurisdiction. Id., at 763 n. 8, 95 S.Ct. 2457. In light of the uncertainties in the adequacy of § 405(g) class relief, we think mandamus is appropriate.
 
 
 [9]
 Nor is there any conflict with Baker v. Mathews, 538 F.2d 855 (9th Cir. 1976); and RoAne v. Mathews, 538 F.2d 852 (9th Cir. 1976). Those cases did not involve due process claims, but involved non-constitutional claims for refunds, which like claims for benefits, should be addressed via § 405(g) only after exhaustion of administrative remedies
 
 
 [10]
 The recent case of Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) does not persuade us otherwise. In distinguishing Eldridge and Salfi, the Court in Califano included some dicta suggesting that if jurisdiction had not been found in those cases under § 405(g) the federal forum would have been closed to colorable constitutional claims:
 Constitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions. Furthermore, since federal-question jurisdiction under 28 U.S.C. § 1331 is precluded by § 205(h), Weinberger v. Salfi, supra, 422 U.S. at 761, 95 S.Ct. 2457, a decision denying § 205(g) jurisdiction in Salfi or Eldridge would effectively have closed the federal forum to the adjudication of colorable constitutional claims. At 109, 97 S.Ct. at 986.
 While this could be read to imply that the Court was precluding mandamus jurisdiction for due process claims, there is no reason to do so. The question of § 1361 jurisdiction was not before the Court in Califano, and it had been specifically left open even after argument in Eldridge, 424 U.S. at 332, 96 S.Ct. 893, n.12. Furthermore, the very next sentence in Califano leads us to believe that the Supreme Court was not sounding the death knell for mandamus jurisdiction by this dictum:
 Thus those cases merely adhered to the well-established principle that when constitutional questions are in issue, the availability of judicial review is presumed, and we will not read a statutory scheme to take the "extraordinary" step of foreclosing jurisdiction unless Congress' intent to do so is manifested by "clear and convincing" evidence. Id., 422 U.S. at 762, 95 S.Ct. (2457), 2465; Johnson v. Robison, 415 U.S. 361, 366-67, 94 S.Ct. 1160, 1165-66, 39 L.Ed.2d 389 (1974). At 109, 97 S.Ct. at 986.
 
 
 [11]
 In Salfi the claimants argued that their position paralleled that of the claimants in Johnson v. Robison, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), wherein the Court found jurisdiction under the analogous Veterans' Administration statute, 38 U.S.C. § 211(a). But Salfi pointed out that § 211(a) precludes review only of decisions of the Veterans' Administration, and the question raised in Johnson did not involve a decision, and thus was not precluded by that statute. It went on to say that the Social Security section at issue, § 405(h), has a broader preclusionary reach which is not limited to decisions only, but "extends to any 'action' seeking to recover on any (Social Security) claim," thus precluding Salfi's action for benefits. Salfi, supra, 422 U.S. at 761-762, 95 S.Ct. at 2465. Thus, the Court has indicated that the proper interpretation of statutes limiting judicial review of agency actions is a strict one, excluding only those matters expressly addressed by the statute. Since § 405(h) addresses only those actions brought "to recover on any claim" it does not preclude the instant suits, which are not for recovery of benefits
 The Tenth Circuit has also concluded that Salfi does not bar mandamus jurisdiction in this type of case. Ryan v. Shea, 525 F.2d 268, 272 (10th Cir. 1975). Cf., Humana of South Carolina, Inc. v. Mathews, 419 F.Supp. 253, 256-258 (D.D.C.1976).
 
 
 [12]
 42 U.S.C. § 405(h):
 The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 of Title 28 to recover on any claim arising under this subchapter.
 When § 405(h) was enacted in 1935, section 41 of Title 28 contained all of that title's grants of jurisdiction to district courts, including § 1331's predecessor. See 28 U.S.C. § 41(1) (1940). It did not contain any grant to federal courts to entertain actions in the nature of mandamus. It was not until 1962 when Congress, in enacting § 1361, extended to all federal courts jurisdiction to hear suits seeking mandamus relief such jurisdiction prior thereto reposed only in the federal courts of the District of Columbia. Thus, § 1361 actions cannot be considered precluded under § 405(h) simply because § 1361 did not exist when § 405(h) was enacted. One might argue that Congress intended all further additions to Title 28's grants of jurisdiction to be, by the mere statutory location of those additions, subsumed within the proscription of § 405(h). However, no such congressional intent is anywhere evidenced.
 12a 38 U.S.C. § 211(a) (1970), amending 38 U.S.C. § 211(a) (1958); 2 U.S. Code Cong. & Admin. News, at 3729-31 (1970).
 12b In this respect these suits resemble Title VII class actions. Back pay awards are simply part of the equitable relief available in conjunction with the primary injunctive relief to eliminate race or sex discrimination. E.E.O.C. v. Detroit Edison Co., 515 F.2d 301, 308 (6th Cir. 1975), appeal pending.
 
 
 [13]
 See United States v. Allegheny-Ludlum Industries, Inc., 517 F.2d 826, 878 (5th Cir. 1975), cert. denied, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976); Frost v. Weinberger, 515 F.2d 57, 65 (2d Cir. 1975), cert. denied, 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976); Katz v. Carte Blanche Corp., 496 F.2d 747, 756 (3d Cir. 1974), cert. denied, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974); Yaffe v. Powers, 454 F.2d 1362, 1366 (1st Cir. 1971); American Financial System, Inc. v. Harlow, 65 F.R.D. 94, 111 (D.Md.1974); Woodward v. Rogers, 344 F.Supp. 974, 980 n.10 (D.D.C.1972), aff'd, 159 U.S.App.D.C. 57, 486 F.2d 1317 (1973); Johnson v. City of Baton Rouge, La., 50 F.R.D. 295, 299 (E.D.La.1970); Northern Natural Gas Co. v. Grounds, 292 F.Supp. 619, 636 (D.Kan.1968); 3B Moore's Fed.Prac. P 23.55, at 23-1152; 7A Wright & Miller, Fed.Pract. & Proc., Civil § 1786 (1973) (notice not required in (b) (2) action). Contra, Schrader v. Selective Service Sys. Loc. Bd. No. 76, 470 F.2d 73, 75 (7th Cir. 1972), cert. denied, 409 U.S. 1085, 93 S.Ct. 689, 34 L.Ed.2d 672 (1972); Zeilstra v. Tarr, 466 F.2d 111, 113 (6th Cir. 1972) (notice required)
 
 
 [14]
 That Buffington's class determination forecloses absent members from bringing individual suits thereafter, in and of itself is not a factor militating against certification of a (b)(2) class action. If it were otherwise, no class actions could ever be certified under (b)(2). This is so because in (b)(2) actions absent members, regardless whether they receive notice or not, cannot excuse themselves from the litigation or avoid res judicata effects of the judgment entered therein. Compare Air Line Stew. v. American Airlines, Inc., supra, 490 F.2d 636, 642 (7 Cir. 1973) with Schrader v. Selective Service Sys. Loc. Bd. No. 76, supra, 470 F.2d at 75. Indeed, (b) (2) actions are generally preferred for their wider res judicata effects. Bing v. Roadway Express, Inc., 485 F.2d 441, 447 (5th Cir. 1973)
 
 
 [15]
 The Secretary contends that when a recipient seeks a waiver, he has no property interest in the amounts overpaid deserving of due process protection. This argument is untenable
 A Social Security recipient has a statutory right to waiver if he is without fault and is financially dependent on the benefits, or has detrimentally relied on the overpayment. Waiver is not a matter of "governmental beneficence," as the Secretary puts it. Under § 404(b) waiver is not discretionary, but mandatory, under the conditions specified. Thus, the statute creates a property interest in retention of overpayments if the conditions of waiver are met, even if there was no right to receive the overpayments in the first place. That property interest commands due process protection. As the Supreme Court observed in Roth, supra, 408 U.S. at 577, 92 S.Ct. at 2709,
 (T)he welfare recipients in Goldberg v. Kelly, supra, had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them. The recipients had not yet shown that they were, in fact, within the statutory terms of eligibility. But we held that they had a right to a hearing at which they might attempt to do so.
 
 
 [16]
 Unlike the disability insurance program, which is not need-related, the old-age and survivors benefits program is need-based insofar as benefits are reduced by a large percentage of any income to the recipient above a very low exemption. This "tax" on non-exempt income is similar to many welfare systems which put a high tax on earned income by reducing welfare benefits by a corresponding high percentage of the earnings
 Nevertheless, both programs are governed by the same code sections, and it is difficult to imagine that persons subject to a reduction in benefits under one program should have a greater interest than one subject to complete termination in a related program. In the absence of a showing that the welfare available to terminated disability recipients is not available to impoverished old-age and survivors recipients, we can not say the plaintiffs in the instant case have a personal interest more like Goldberg than Eldridge.
 
 
 [17]
 However, under certain limited circumstances, the Social Security program may be the "last step", raising the interest to the Goldberg level. See discussion infra at 1233-1234
 
 
 [18]
 Plaintiffs have not attempted, in light of Eldridge, to argue that reconsideration cases generally require a prior oral hearing, despite the trial court's ruling in their favor on this point
 
 
 [19]
 The Secretary seizes upon the fact that 20 C.F.R. § 404.507 utilizes the objective standard ("knew or should have known") for determining fault rather than an entirely subjective one (actual knowledge being the sole determinant) in arguing that this standard precludes the need for an oral hearing. But this misconstrues the objective, or "reasonable person", test. The decisionmaker has to hear the claimant's story and perception of the facts in order to determine whether he should "should have known." To say that the decisionmaker need not hold a hearing, just because in some cases claimants will fail to meet their burden after testimony, is absurd. Since § 404.507 requires the reasonable person to be viewed in the claimant's own circumstances and with whatever mental and physical limitations the claimant might have, the claimant must be given an effective opportunity to communicate these characteristics to the decisionmaker. The very test which might permit a decision on documentary evidence alone as a matter of administrative law, is itself dependent upon information which can effectively be adduced only at an oral hearing
 
 
 [20]
 The trial court's figures referred to all disputes, without breaking down each category. Nevertheless, they are useful to show that the relatively few disputes which do occur are quite often meritorious
 
 
 [21]
 This right however does not attach if the claimant raises no disputed fact. See Mills v. Richardson, 464 F.2d 995, 1001 (2d Cir. 1972)
 
 
 [22]
 Like the district court in Elliott we have serious doubts as to the adequacy of the Secretary's summary explanation of some of its overpayment determinations as the result of "processing error." The strictures of due process would seem to compel a more elaborate description of the type of error which gave rise to the Secretary's determination in the first instance
 
 
 [23]
 It is important that the explanations of these two forms of relief be made very clear. Given the difficulty beneficiaries may have in figuring out whether they might qualify for a waiver, or reconsideration, or both in the alternative, and the subtleties which may inhere in determining which is appropriate and whether an oral hearing is required in any given situation, it may be prudent for the Secretary to furnish recipients with forms and additional information for both reconsideration and waiver when there is doubt as to which applies. This, however, is not a constitutional imperative