**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CHELSEA HAMILTON; ALYSSA
HERNANDEZ, on behalf of
themselves and all others similarly
situated,

*Plaintiffs-Appellants*,

v.

WAL-MART STORES, INC., a
corporation; WAL-MART
ASSOCIATES, INC., a corporation;
DOES, 1 through 50, inclusive,

*Defendants-Appellees.*

No. 19-56161

D.C. Nos.
5:17-cv-01415-
AB-KK
5:17-cv-01485-
AB-KK

CHELSEA HAMILTON; ALYSSA
HERNANDEZ, on behalf of
themselves and all others similarly
situated,
                    *Plaintiffs-Appellees*,

                    v.

WAL-MART STORES, INC., a
corporation; WAL-MART
ASSOCIATES, INC., a corporation,
                    *Defendants-Appellants*,

                    and

DOES, 1 through 50, inclusive,
                    *Defendants.*

No. 20-55223

D.C. Nos.
5:17-cv-01415-
AB-KK
5:17-cv-01485-
AB-KK

OPINION

Appeal from the United States District Court
for the Central District of California
Andre Birotte, Jr., District Judge, Presiding

Argued and Submitted May 14, 2021
Pasadena, California

Filed June 30, 2022

Before:  Marsha S. Berzon and Jay S. Bybee, Circuit
Judges, and Kathleen Cardone,[*] District Judge.

Opinion by Judge Berzon

---

[*] The Honorable Kathleen Cardone, United States District Judge for
the Western District of Texas, sitting by designation.

## SUMMARY[**]

### California's Private Attorneys General Act

The panel reversed the district court's dismissal of Alyssa Hernandez's California Private Attorney General Act ("PAGA") claims, alleging wage and hour violations, against Wal-Mart Stores, Inc.; and remanded for further proceedings.

The district court dismissed some of Hernandez's PAGA claims on the ground that they were unmanageable and dismissed her remaining PAGA claims as a discovery sanction.

California's Labor Code allows employees to sue an employer for violating provisions designed to protect the health, safety, and compensation of workers. Following the enactment of PAGA in 2004, employees may stand in the shoes of the Labor Commissioner and recover civil penalties for Labor Code violations. Sections 2699(a) and 2699.3 of PAGA contain requirements for such actions.

The panel first addressed the question whether, in addition to the presuit requirements listed in Cal. Labor Code section 2699.3, an aggrieved employee asserting a PAGA cause of action must also certify the requirements for class certification included in Fed. R. Civ. P. 23. The panel held that the recently decided *Viking River Cruises, Inc. v. Moriana*, — S. Ct. —, 2022 WL 2135491, at *3 (2022), case expressly foreclosed Walmart's argument that Hernandez

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

was barred from pursuing her PAGA claims because she did not seek class certification under Rule 23. In addition, given their differing coverage, PAGA and Rule 23 are fully compatible and do not conflict for purposes of the first step of an *Erie* analysis. The panel also rejected Walmart's argument that the district court correctly rejected some of Hernandez's PAGA claims as unmanageable under its inherent authority. The panel held that, in light of the structure and purpose of PAGA, imposing a manageability requirement in PAGA cases akin to that imposed under Rule 23(b)(3) would not constitute a reasonable response to a specific problem and would contradict California law by running afoul of the key features of PAGA actions. The panel concluded that an employee plaintiff need not comply with the Rule 23 requirements, including the "manageability" requirement, to assert a PAGA cause of action.

The panel next addressed the question whether Hernandez's PAGA claims were barred because of a failure sufficiently to disclose estimated damages under Fed. R. Civ. P. 26(a). The panel held that Rule 26(a) applied to claims for damages. Hernandez's PAGA claims seek civil penalties, not damages, so Rule 26(a) does not apply to her PAGA claims.

The panel addressed remaining claims raised on appeal in a concurrently filed memorandum disposition.

**COUNSEL**

Kenneth H. Yoon (argued), Stephanie E. Yasuda, and Brian G. Lee, Yoon Law APC, Los Angeles, California; G. Samuel Cleaver, Law Offices of G. Samuel Cleaver, Los Angeles, California; Brian J. Mankin and Peter J. Carlson, Fernandez & Lauby LLP, Riverside, California; for Plaintiffs-Appellants/Cross-Appellees.

Theane Evangelis (argued), Bradley J. Hamburger, Elizabeth A. Dooley, and William F. Cole, Gibson Dunn & Crutcher LLP, Los Angeles, California; Mark D. Kemple, Robert J. Herrington, and Matthew R. Gershman, Greenberg Traurig LLP, Los Angeles, California; for Defendants-Appellees/Cross-Appellants.

**OPINION**

BERZON, Circuit Judge:

Plaintiff Alyssa Hernandez brought five claims arising under the California Private Attorneys General Act ("PAGA"), all concerning alleged wage and hour violations, against Wal-Mart Stores, Inc. and Wal-Mart Associates, Inc. (collectively, "Walmart"). The district court dismissed some of Hernandez's PAGA claims on the ground that they were unmanageable and dismissed her remaining PAGA claims as a discovery sanction. We reverse the dismissal of each of Hernandez's PAGA claims and remand for further proceedings.

# I.

## A.  Factual Background

In July 2015, Walmart opened a large ecommerce fulfillment center in Chino, California.  Employees at the center send merchandise to consumers who order products online.

As an anti-theft measure, Walmart placed a security checkpoint where employees exit the facility.  Employees were required to go through the security checkpoint whenever they left the facility, including for lunch and at the end of the workday.  The security checkpoint was located after the terminal where employees clocked out by swiping their badges on a timeclock machine.  The process of going through the security checkpoint involved clocking out at the timeclock terminal, walking from the timeclock terminal to the security checkpoint, waiting in line, placing one's personal belongings such as backpacks and purses in an inspection area, waiting for security personnel to inspect the belongings, going through metal detectors, and leaving the security checkpoint through a turnstile.

Employees were also required to take their allotted breaks each day in designated rest areas.  The "several minutes" employees spent walking to and from the designated rest areas were deducted from their 15-minute break periods.

Although Plaintiffs raised several putative class action claims before the district court, this opinion exclusively

analyzes Hernandez's PAGA claims.[1]  In the First Amended Complaint ("FAC"), Hernandez, a former employee of Walmart who worked at the Chino facility from 2016 to 2018, asserted five PAGA causes of action against Walmart. She sought civil penalties under PAGA for Walmart's alleged: (1) failure to pay wages for all hours worked, (2) failure to provide meal periods, (3) failure to provide rest breaks, (4) failure to pay wages timely, and (5) failure to provide accurate itemized wage statements.

As the first PAGA cause of action, Hernandez alleged that because Walmart required employees to clock out before going through the security checkpoint, which frequently took "15 to 20 minutes . . . to get through," she and other similarly situated employees were not fully compensated for all hours worked, including overtime hours.

For the second PAGA cause of action, Hernandez stated that although Walmart provided each employee with a 30-minute meal period, that period included the time the employee spent going through the security checkpoint process.  Because employees were "under the control of the company" during that process, Hernandez alleged, she and other similarly situated employees "were regularly not provided with uninterrupted meal periods of at least 30 minutes, as required by California law."  *See* Cal. Lab. Code § 512(a); *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1040–41 (2012).  Hernandez asserted that Walmart's security checkpoint policy impeded or discouraged lunch breaks and that Walmart regularly did not provide a second duty-free meal period during shifts in

---

[1] We address the remaining claims raised on appeal in a concurrently filed memorandum disposition.

excess of ten hours, also in violation of California law. *Brinker*, 53 Cal. 4th at 1040–41.

Hernandez's third PAGA cause of action alleged that she and other similarly situated employees were required to take their rest breaks in designated areas. The time it took "to travel to and from the designated rest areas" was deducted from each employee's allotted 15-minute break period, meaning that Hernandez and other similarly situated employees were not always "provided net rest periods of at least 10 minutes for each 4-hour work period, or major fraction thereof," as required by California law. *See* Cal. Code Regs. tit. 8, § 11040(12)(A).

As the fourth PAGA cause of action, Hernandez alleged that Walmart miscalculated the wages owed to her and other similarly situated employees in light of the security checkpoint issue. As a result, Walmart failed to pay "all wages due and owing . . . within the time specified" by California Labor Code sections 201 and 202, and also failed to pay "waiting time penalties" in accordance with California Labor Code section 203.

Finally, Hernandez's fifth PAGA cause of action stated that she and other similarly situated employees were not provided with wage statements that accurately reported the gross wages earned, all deductions, and net wages earned, as well as all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate.

## B. Procedural History

This case was initiated in California state court by Chelsea Hamilton, a former employee of Walmart who worked at the Chino fulfillment center. The original

complaint did not contain any PAGA causes of action, instead focusing on putative class claims.  About one month after Hamilton filed the original complaint, Walmart removed the case to federal court.  Hamilton then filed the FAC adding Hernandez as a plaintiff, and Hernandez alleged the five PAGA causes of action.

During pre-trial proceedings, Plaintiffs filed expert reports from Dr. Brian Kriegler and Dr. Stephanie J. Bonin regarding their methods of calculating the time required to go through the security checkpoint and to walk to the designated rest areas, and later filed a supplemental expert report from Dr. Kriegler providing further detail regarding his methodology.  Walmart moved to strike the expert reports for failure to comply with Rule 26(a) of the Federal Rules of Civil Procedure.  Walmart also moved for summary judgment on Hernandez's PAGA claims, arguing that the claims could not be maintained because Hernandez did not plead them under Rule 23 of the Federal Rules of Civil Procedure and because the claims were unmanageable.

The district court rejected Walmart's Rule 23 argument. In a separate order, the court largely granted Walmart's motion to strike the expert reports.  It concluded that the expert reports ran afoul of Rule 26(a) because they did not sufficiently detail how the experts would calculate "walking time," "waiting time," and "security check time," and it further determined that the Plaintiffs' noncompliance with Rule 26(a) was willful.  The court then struck from the record Dr. Kriegler's initial and supplemental time calculations and Dr. Bonin's entire report.

Although the court had originally certified six subclasses for trial, it decertified all the subclasses tied to the security checkpoint issue except for the meal break subclass, which it limited to a "discouragement" theory. *See Brinker*, 53 Cal.

4th at 1040–41. Explaining its decertification ruling, the court stated that without the expert reports, plaintiffs could not present a workable method for calculating damages. After Hernandez made clear her intention to continue pursuing PAGA penalties for the decertified class claims, the district court dismissed Hernandez's PAGA claims related to the security checkpoint issue as unmanageable and dismissed her remaining PAGA claims for failure sufficiently to disclose estimated damages under Rule 26(a).

The two surviving class claims—discouragement of meal breaks and a wage theft claim tied to an allegedly defective alternative workweek schedule election—proceeded to trial. The jury returned a special verdict in Walmart's favor on the election claim, concluding that Walmart "prove[d] by a preponderance of the evidence that it met the requirements of an Alternative Workweek Schedule election." On the discouragement of meal breaks claim, the jury returned a special verdict for Plaintiffs in the amount of $6,001,599 for 452,491 meal break violations.

After a bench trial in which the trial court denied Plaintiffs' motion for prejudgment interest and determined that Plaintiffs had not adduced sufficient evidence of injury related to Plaintiffs' wage statement claim, the district court entered judgment. Both parties filed post-trial motions, with Walmart seeking judgment as a matter of law as to the meal break claim, and Plaintiffs seeking a new trial, judgment as a matter of law on the election claim, and pretrial interest. The district court denied all motions. Both parties appealed.

## II.

"California's Labor Code contains a number of provisions designed to protect the health, safety, and compensation of workers." *Kim v. Reins Int'l Cal., Inc.*,

9 Cal. 5th 73, 80 (2020). Employees may sue an employer for violating these provisions and obtain "damages or statutory penalties . . . including double or treble damages." *Id.* (emphasis omitted). In addition, following the enactment of PAGA in 2004, employees may stand in the shoes of the Labor Commissioner and recover civil penalties for Labor Code violations. *See, e.g.*, *Viking River Cruises, Inc. v. Moriana*, — S. Ct. —, 2022 WL 2135491, at *3 (2022).

Specifically, section 2699(a) of PAGA states that any Labor Code provision "that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees . . . may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3." Cal. Lab. Code § 2699(a).

Section 2699.3, in turn, requires the employee to give written notice of the alleged Labor Code violation to both the employer and the Labor and Workforce Development Agency. Cal. Lab. Code § 2699.3(a). The agency then has a right of first refusal over the claim. Cal. Lab. Code § 2699.3(a)(2). If the agency declines to investigate the claim, does not respond to the aggrieved employee's notice within 65 days, or does not issue a citation within 120 days of announcing its decision to investigate the claim, the aggrieved employee may commence an action for civil penalties. *Id.* If the aggrieved employee's action is successful, 75 percent of the funds recovered go to the Labor and Workforce Development Agency "for enforcement of labor laws" or "education of employers and employees about their rights and responsibilities," and 25 percent of the

recovered funds go to the "aggrieved employees," *id.* § 2699(i), meaning the plaintiff and all employees affected by the Labor Code violation. *Viking River Cruises*, 2022 WL 2135491, at *3; *Saucillo v. Peck*, 25 F.4th 1118, 1128 (9th Cir. 2022).

The first question we address is whether, in addition to the presuit requirements listed in section 2699.3, an aggrieved employee asserting a PAGA cause of action must also satisfy the requirements for class certification included in Rule 23 of the Federal Rules of Civil Procedure. We conclude that an employee plaintiff need not comply with the Rule 23 requirements, including the "manageability" requirement, to assert a PAGA cause of action.

The second question is whether Hernandez's PAGA claims are barred because of a failure sufficiently to disclose estimated damages under Rule 26(a). Again, our answer is no. Rule 26(a) applies to claims for damages. Hernandez's PAGA claims seek civil penalties, not damages, so Rule 26(a) does not apply to her PAGA claims.

## A.

### i.

Walmart argues that Hernandez is barred from pursuing her PAGA claims because she did not seek class certification under Rule 23. The district court rejected this argument. It noted that the dominant view among district courts in the Ninth Circuit is that PAGA actions need not satisfy Rule 23 class certification requirements. We agree. As emphasized in *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1119–24 (9th Cir. 2014), and *Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 848–54 (9th Cir. 2020), Rule 23 class actions and PAGA actions are so conceptually distinct that

class action precepts generally have little salience for PAGA actions. *Viking River Cruises* embraces the reasoning of those decisions and expressly forecloses Walmart's argument.

In the course of invalidating as preempted by the Federal Arbitration Act a California rule of law that previously rendered arbitration clauses targeting PAGA claims unenforceable, *Viking River Cruises* explains that although PAGA actions "permit the adjudication of multiple claims in a single suit" like Rule 23 class actions, "their structure is entirely different." *Viking River Cruises*, 2022 WL 2135491, at *8. It emphasizes three critical distinctions between PAGA actions and class actions that render Rule 23 certification requirements inapplicable to PAGA suits. First, "[a] class-action plaintiff can raise a multitude of claims because he or she represents a multitude of absent individuals; a PAGA plaintiff, by contrast, represents a single principal, the [Labor Workforce Development Agency], that has a multitude of claims." *Id.* Second, "PAGA judgments are not binding on nonparty employees as to any individually held claims." *Id.* And third, although PAGA "gives other affected employees a future interest in the penalties awarded in an action," *id.*, in the sense that 25 percent of the funds recovered in a PAGA action go to the "aggrieved employees," meaning the plaintiff and all other employees affected by the Labor Code violation," *Saucillo*, 25 F.4th at 1128, "that interest does not make those employees 'parties' in any of the senses in which absent class members are" parties, nor does it give "those employees anything more than an inchoate interest in litigation proceeds," *Viking River Cruises*, 2022 WL 2135491, at *8.

In light of these structural differences, "PAGA suits exhibit virtually none of the procedural characteristics of class actions," so there is no need for courts to consider "adequacy of representation, numerosity, commonality, or typicality," and "no need for certification" under Rule 23, as the Rule 23 requirements are a logical mismatch for PAGA actions. *Id.*; *see also Saucillo*, 25 F.4th at 1126–29; *Canela*, 971 F.3d at 850–54; *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 435, 439 (9th Cir. 2015); *Baumann*, 747 F.3d at 1122–24; *Kim*, 9 Cal. 5th at 81, 84–88; *Arias v. Superior Court*, 46 Cal. 4th 969, 980–87 (2009). Walmart's argument that Hernandez's PAGA claims should be dismissed because she did not seek class certification under Rule 23 is therefore unavailing.

**ii.**

Walmart argues that PAGA actions brought in or removed to federal court nonetheless must comply with Rule 23 because "PAGA is a state procedural statute" that conflicts with Rule 23 and, under the *Erie* doctrine, federal procedural rules "trump any inconsistent state procedur[al] rules]." *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). As *Viking River Cruises* did not directly address this contention, we briefly consider it here.

The *Erie* doctrine addresses "whether state or federal law should apply on various issues arising in an action based on state law which has been brought in federal court." *Walker v. Armco Steel Corp.*, 446 U.S. 740, 744 (1980). It commands that, in such cases, federal courts must apply state substantive law. *Sibbach v. Wilson & Co.*, 312 U.S. 1, 9–10 (1941). But "Congress has undoubted power to regulate the practice and procedure of federal courts," so, generally, if a state procedural rule conflicts with a federal procedural rule, the federal procedural rule controls. *Id.*

Rule 23 is, of course, a federal procedural rule. *See, e.g.*, *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408–11 (2010) (plurality opinion).[2]   But Walmart's assertion that PAGA as a whole constitutes a state procedural rule inconsistent with Rule 23 is incorrect.  Even if PAGA qualifies as a state procedural rule rather than substantive rule for purposes of an *Erie* analysis—a proposition that is itself on shaky footing, *see, e.g.*, *Zackaria v. Wal-Mart Stores, Inc.*, 142 F. Supp. 3d 949, 956–58 (C.D. Cal. 2015)—we conclude that PAGA does not conflict with Rule 23, as, for reasons largely already surveyed, Rule 23 does not govern cases with PAGA's features.[3]

---

[2] In *Shady Grove*, Justice Scalia delivered the opinion of the Court with respect to Parts I and II-A and an opinion with respect to Parts II-B, II-C, and II-D.  559 U.S. at 395–96.  Although the proposition that Rule 23 is a federal procedural rule is discussed in Part II-B of Justice Scalia's opinion, all nine Justices agreed that Rule 23 is a federal procedural rule.  *See, e.g.*, *id.* at 408–11; *id.* at 429–30 (Stevens, J., concurring in part and concurring in the judgment); *id.* at 451–52 (Ginsburg, J., dissenting).

[3] *Zackaria* states that "[w]hile PAGA may be comparable in some ways to rules that are procedural," district courts have observed that it "transcends the definition of what is simply procedural."  142 F. Supp. 3d at 956–58 (citing several district court cases).  To begin, "PAGA is substantive for *Erie* purposes 'because it gives plaintiffs a right to recover in specified circumstances'" that would not otherwise exist.  *Id.* at 957 (quoting *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 810 (N.D. Cal. 2015)).  PAGA was also "established for a public reason": remedying systemic underenforcement of California's labor laws. *Sakkab*, 803 F.3d at 431.  Finally, a decision to the contrary could undermine one of the "twin aims of the *Erie* rule: discouragement of forum-shopping," *Hanna v. Plumer*, 380 U.S. 460, 468 (1965), by encouraging removal of all PAGA cases to federal court.  These considerations indicate that, for purposes of an *Erie* analysis, PAGA in general quite probably qualifies as substantive rather than procedural. We shall assume otherwise, however, for purposes of this opinion.

To determine whether PAGA conflicts with Rule 23, we "must first determine whether Rule 23 answers the question in dispute." *Shady Grove*, 559 U.S. at 398. "We ask whether, when fairly construed, the scope of [Rule 23] is sufficiently broad to cause a direct collision with the state law, or, implicitly, to control the issue before the court, thereby leaving no room for the operation of that law." *Ellis v. Salt River Project*, 24 F.4th 1262, 1269 (9th Cir. 2022) (internal quotation marks omitted) (quoting *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 4–5 (1987)). "If so, then the federal rule controls 'unless it exceeds statutory authorization or Congress's rulemaking power.'" *Id.* (quoting *Shady Grove*, 559 U.S. at 398). In contrast, if the federal and state rules "can be reconciled," then they do not qualify as in conflict and the court's *Erie* analysis ends. *Shady Grove*, 559 U.S. at 410 (plurality opinion); *id.* at 421 (Stevens, J., concurring in part and concurring in the judgment); *id.* at 437 (Ginsburg, J., dissenting).

*Shady Grove* is instructive with respect to this threshold question. There, a New York state law prohibited certain suits—such as suits to recover statutory minimum damages—from proceeding as class actions, even if the suits complied with the dictates of Rule 23. 559 U.S. at 396–97. When assessing whether the statute conflicted with Rule 23, the high court explained that Rule 23 constitutes "a categorical rule entitling a plaintiff whose suit meets the specified criteria" listed in Rule 23 "to pursue his claim as a class action." *Id.* at 398. Because the New York statute precluded some suits that met those criteria from being filed as class actions, the New York statute conflicted with Rule 23. *Id.* at 398–99.

Here, as we have explained, *see supra* Part II.A.i, in light of the substance and essentials of a PAGA action, such an

action is distinct from a Rule 23 class action and is not compatible with the precepts of Rule 23.  To recap: because a PAGA action is an "enforcement action[]" brought on behalf of the state rather than an action aggregating the individual claims of a group of plaintiffs; because PAGA judgments do not prevent absent aggrieved employees from seeking any "other remedies" they may be entitled to "under state or federal law"; and because PAGA actions and Rule 23 class actions serve differing overall and "remedial" purposes, a PAGA does not raise the concerns to which Rule 23 is addressed. *Viking River Cruises*, 2022 WL 2135491, at *8; *Canela*, 971 F.3d at 851–56; *Baumann*, 747 F.3d at 1122–24.  Thus, unlike the New York statute at issue in *Shady Grove*, which prohibited plaintiffs from bringing their claims as class actions even if the claims *did* comply with the dictates of Rule 23, PAGA authorizes a type of action fundamentally distinct from a class action, one that does not have most of the features that the requirements of Rule 23 seek to regulate.  Given their differing coverage, PAGA and Rule 23 are fully compatible and do not conflict for purposes of the first step of an *Erie* analysis.  *See Shady Grove*, 559 U.S. at 410 (plurality opinion); *id.* at 421 (Stevens, J., concurring in part and concurring in the judgment); *id.* at 437 (Ginsburg, J., dissenting).[4]

## B.

As an alternative to its argument based on Rule 23's general certification requirements, Walmart maintains the

---

[4] A short footnote in *Arias* states that PAGA suits can be brought as class actions. *Arias*, 46 Cal. 4th at 981 n.5.  But that footnote was "dicta" and was subsequently rejected in *Kim*, which "emphasized that a PAGA cause of action cannot be a class action" in light of the different inherent attributes of two kinds of suit. *Canela*, 971 F.3d at 855–56 (citing *Kim*, 9 Cal. 5th at 87).

district court correctly rejected some of Hernandez's PAGA claims as unmanageable, relying on its inherent authority. That argument fairs no better.

The concept of manageability finds its genesis in Rule 23(b)(3) class actions. *See, e.g.*, *Zackaria*, 142 F. Supp. 3d at 958–60. Such actions, which bundle individual claims for money damages, may be maintained only if "the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Rule expressly contemplates that "the likely difficulties in managing a class action" are "matters pertinent" to the court's evaluation of predominance and superiority. Fed. R. Civ. P. 23(b)(3)(D). That is why, when discussing the "manageability" of a class action, courts have spoken of whether a class action is "the superior method of adjudicat[ing]" the controversy, *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 515 (9th Cir. 2013), or whether individualized issues predominate over common issues, *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558–60, 563 (9th Cir. 2019) (en banc).

There is a split among both district courts and California courts regarding whether it is permissible for a court to dismiss a PAGA action on similar "manageability" grounds. *Compare, e.g.*, *Wesson v. Staples the Off. Superstore, LLC*, 68 Cal. App. 5th 746, 755 (2021) (permissible), *and Amiri v. Cox Commc'ns Cal., LLC*, 272 F. Supp. 3d 1187, 1193–94 (C.D. Cal. 2017) (permissible), *with Estrada v. Royalty Carpet Mills, Inc.*, 76 Cal. App. 5th 685, 710 (2022) (impermissible), *and Zackaria*, 142 F. Supp. 3d at 959 (impermissible). The opinions in favor of imposing a

manageability requirement in PAGA actions observe that courts possess an inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *See, e.g.*, *Valadez v. CSX Intermodal Terminals, Inc.*, 298 F. Supp. 3d 1254, 1266 (N.D. Cal. 2018). From that proposition, the opinions derive the conclusion that this power allows courts to strike a PAGA claim if, for example, "establishing liability based on Labor Code violations would be unmanageable due to the individualized assessments required to prove violations." *Amiri*, 272 F. Supp. 3d at 1193–94; *see also Wesson*, 68 Cal. App. 5th at 766–67.

In response, the opinions that reach a contrary conclusion on the manageability question note that a court's inherent powers are limited and end short of imposing an inapposite requirement. Specifically, under federal law, an exercise of inherent powers "must be a reasonable response to a specific problem and . . . cannot contradict any express rule or statute." *Dietz v. Bouldin*, 579 U.S. 40, 46 (2016).[5]

In light of the structure and purpose of PAGA, we conclude that imposing a manageability requirement in

---

[5] Some unpublished decisions also justify application of a manageability requirement in PAGA cases on the ground that Rule 12(f) of the Federal Rules of Civil Procedure allows a court to "strike from the pleadings any 'redundant, immaterial, impertinent or scandalous matter.'" *See, e.g.*, *Salazar v. McDonald's Corp.*, No. 14-cv-02096-RS, 2017 WL 88999, at *7 (N.D. Cal. Jan. 5, 2017) (quoting Fed. R. Civ. P. 12(f)). A PAGA action, such courts maintain, could be considered "'immaterial' to the extent a representative PAGA action is unmanageable." *Id.* Neither the parties nor the district court advanced a Rule 12(f) argument in this case. In any event, imposing an affirmative manageability requirement bears no resemblance to "striking" part of a pleading, nor do materiality and manageability have anything to do with one another.

PAGA cases akin to that imposed under Rule 23(b)(3) would not constitute a reasonable response to a specific problem and would contradict California law by running afoul of the key features of PAGA actions.

### i.

We note at the outset that the manageability requirement the district court imposed on Hernandez's security checkpoint PAGA claims was virtually identical to the manageability requirement it imposed on the plaintiffs' Rule 23(b)(3) claims, with the court even commenting, "I thought the Court had already found that those claims were unmanageable." Walmart's briefing continues the same line of reasoning, stating that "[t]he district court properly decertified Plaintiffs' off-the-clock Rule 23 claim on the basis that it was unmanageable because it would require too many individualized determinations regarding 'the time it takes to walk to the security checkpoint, wait in line, and go through the security check,'" and "[b]ecause the PAGA off-the-clock claim is premised on exactly the same theory, it is also unmanageable."

Although the manageability requirement makes sense in the context of Rule 23(b)(3) actions, it does not constitute a reasonable response to a specific problem in PAGA cases because of, again, the structural differences between the two forms of action.

Rule 23(b)(3) actions are considered "the most adventuresome" type of class action. *Amchem*, 521 U.S. at 614–15. Aggregation "is not as clearly called for" under Rule 23(b)(3) "as it is in Rule 23(b)(1) and Rule 23(b)(2) situations." *Id*. Aggregation is "clearly called for" in Rule 23(b)(1) cases because of the need to ensure fair outcomes among plaintiffs, such as the appropriate distribution in

"limited fund" cases of finite resources. *See id.* at 614 (quoting Fed. R. Civ. P. 23 advisory committee's note to 1937 adoption). And aggregation is "clearly called for" in Rule 23(b)(2) cases in light of "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). Put differently, "[c]lasses certified under (b)(1) and (b)(2) share the most traditional justifications for class treatment—that individual adjudications would be impossible or unworkable, as in a (b)(1) class, or that the relief sought must perforce affect the entire class at once, as in a (b)(2) class." *Id.* at 361–62 (footnote omitted).

The drive to bundle the plaintiffs' claims in Rule 23(b)(3) cases is different because the Rule "allows class certification in a much wider set of circumstances," including circumstances in which an absent plaintiff could pursue relief directly,[6]  and would not jeopardize the interests of others in doing so. *Id.* at 362. Congress, "[s]ensitive to the competing tugs of individual autonomy for those who might prefer to go it alone or in a smaller unit, on the one hand, and systemic efficiency on the other," imposed the procedural requirements of predominance and superiority on Rule 23(b)(3) cases to ensure that such cases

---

[6] Of course, this supposition does not hold true in cases where the cost of bringing suit outweighs the damages a plaintiff could expect to recover. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190, *amended by* 273 F.3d 1266 (9th Cir. 2001). In such cases, sometimes called "negative value suit[s]," *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996), a class action is the only realistic possibility for redress. *Zinser*, 253 F.3d at 1190.

may only proceed as class actions when doing so "would achieve economies of time, effort, and expense and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness." *Amchem*, 521 U.S. at 615 (second alteration in original) (quoting Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment).

The manageability requirement, a subsidiary component of the predominance and superiority inquiries, was thus specifically devised to address concerns arising from the aggregation of individual claims for money damages. That context is why the requirement is not applicable to Rule 23(b)(1) or Rule 23(b)(2) cases. *See Rodriguez v. Hayes*, 591 F.3d 1105, 1125–26 (9th Cir. 2010); *Elliott v. Weinberger*, 564 F.2d 1219, 1229 (9th Cir. 1977), *aff'd in part and rev'd in part sub nom. Califano v. Yamasaki*, 442 U.S. 682 (1979); *see also, e.g.*, *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).

Like Rule 23(b)(1) and 23(b)(3) class actions, PAGA cases do not involve individual claims for money damages. As explained, *see supra* Part II.A.i., "[t]here is no individual component to a PAGA action" because "[p]laintiffs may bring a PAGA claim *only* as the state's designated proxy, suing on behalf of *all* affected employees." *Kim*, 9 Cal. 5th at 87; *see also Viking River Cruises*, 2022 WL 2135491, at *8; *Sakkab*, 803 F.3d at 435. Absent employees are free to pursue any other remedies available by law, including damages and equitable relief. Cal. Lab. Code § 2699(g)(1); *see also Viking River Cruises,* 2022 WL 2135491, at *8; *Canela*, 971 F.3d at 852; *Arias*, 46 Cal. 4th at 987; *Saucillo*, 25 F.4th at 1127. And the civil penalty due upon a showing that the defendant violated the Labor Code is fixed by statute and does not involve individualized determinations of injury. *See* Cal. Lab. Code § 2699(f)(2).

These structural distinctions between Rule 23(b)(3) actions and PAGA actions render it inappropriate to graft a Rule 23-derived manageability requirement onto PAGA actions. In other words, the reasons it would be inappropriate to apply the overarching Rule 23 requirements to PAGA actions are amplified with respect to the manageability requirement, which applies only to a subset of Rule 23 class actions, based on the unique features of that subset. So application of the Rule 23 manageability requirement in PAGA cases would not constitute a reasonable response to a specific problem and, by extension, would not constitute a permissible exercise of a federal court's inherent powers.

**ii.**

Imposing a manageability requirement in PAGA cases would also contradict the purposes of PAGA by undermining the key features of a PAGA action, rendering it an improper exercise of a court's inherent powers.

PAGA empowers aggrieved employees to enforce California labor laws, thereby preventing a recurrence of the "systemic underenforcement of many worker protections" that occurred before the passage of the statute. *Williams v. Superior Court*, 3 Cal. 5th 531, 545 (2017). Unlike Rule 23(b)(3), the statute's provisions are directed not at promoting convenience and judicial economy, but at augmenting the limited enforcement capabilities of the Labor and Workforce Development Agency, *Viking River Cruises*, 2022 WL 2135491, at *3, and "achiev[ing] maximum compliance with state labor laws," *Arias*, 46 Cal. 4th at 980.

Imposing a manageability requirement in PAGA cases would undermine these core goals of the statute for two

reasons. First, when the state brings suit against an employer for violating the Labor Code, it need not comply with a manageability requirement even though individualized issues are equally present in such actions, as civil penalties are assessed according to the "same limitations and conditions" in PAGA suits and state enforcement actions. Cal. Lab. Code § 2699(e)(1); *see also Estrada*, 76 Cal. App. 5th at 712; *Zackaria*, 142 F. Supp. 3d at 959; *LaFace v. Ralphs Grocery Co.*, 75 Cal. App. 5th 388, 401 (2022). Dismissing a PAGA suit on such grounds would therefore "impose a barrier on such actions that the state law enforcement agency does not face when it litigates those cases itself." *Estrada*, 76 Cal. App. 5th at 710. Because "[h]urdles that impede the effective prosecution of representative PAGA actions undermine the Legislature's objectives," *Kim*, 9 Cal. 5th at 87 (quoting *Williams*, 3 Cal. 5th at 548), the manageability requirement is inconsistent with the statute's structure.

Second, in the context of Rule 23(b)(3) actions, the manageability requirement is nested as one "pertinent" consideration among others, and the text of the Rule "calls for a comparative assessment of the costs and benefits of class adjudication, including the availability of 'other methods' for resolving the controversy." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1126, 1128 (9th Cir. 2017) (quoting Fed. R. Civ. P. 23(b)(3)). In contrast, a freestanding manageability requirement "would invite courts to consider the administrative burdens" of the action "in a vacuum." *Id.* at 1128 (quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663 (7th Cir. 2015)). "That difference in approach would often be outcome determinative," leading to the dismissal of many PAGA cases, *id.*, which would in turn "interfere with PAGA's

express design as a law enforcement mechanism." *Estrada*, 76 Cal. App. 5th at 712.

Put differently, *Briseno* held that putative class actions involving monetary damages need not satisfy a freestanding administrability inquiry, as Congress "opted not to make the potential administrative burdens of a class action dispositive and instead directed courts to balance the benefits of class adjudication against its costs." 844 F.3d at 1128. It would be similarly inappropriate to allow federal courts to treat a freestanding manageability requirement as a dispositive consideration in PAGA cases.

\*\*\*

In sum, application of the Rule 23(b)(3) manageability requirement in PAGA cases would be "inconsistent with PAGA's purpose and statutory scheme," *Zackaria*, 142 F. Supp. 3d at 958, and would not represent a reasonable solution to a specific problem. The requirement cannot be imposed in PAGA actions under the guise of a court's inherent powers.

## C.

The district court dismissed some of Hernandez's PAGA claims as a discovery sanction on the ground that Plaintiffs failed sufficiently to disclose estimated damages under Rule 26(a). This Court reviews the imposition of discovery sanctions for abuse of discretion. *Payne v. Exxon Corp.*, 121 F.3d 503, 507 (9th Cir. 1997). For dismissal of a claim to qualify as a proper discovery sanction, "the conduct to be sanctioned must be due to 'willfulness, fault, or bad faith.'" *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995) (quoting *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 946 (9th Cir. 1993)). Here, the district court's

dismissal was an abuse of discretion, as Plaintiffs did not violate Rule 26.

Rule 26(a) provides, in relevant part, that "a party must, without awaiting a discovery request, provide" opposing counsel with "a computation of each *category of damages* claimed by the disclosing party" and "must also make available for inspection and copying . . . the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based." Fed. R. Civ. P. 26(a)(1)(A) (emphasis added). The text of the Rule therefore is limited in its reach to the calculation of *damages*, as opposed to the calculation of other kinds of remedies.[7]

PAGA provides a private right of action to obtain *civil penalties* for violations of the California Labor Code. Such penalties are fixed by statute, either in the text of the applicable provision of the Labor Code or in PAGA itself, which establishes that for Labor Code violations for which no penalty is provided in the statutory text, the penalty "is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars

---

[7] The Advisory Committee Notes to the 1993 Amendment of Rule 26 state that "[a] party claiming damages or other monetary relief must, in addition to disclosing the calculation of such damages, make available the supporting documents for inspection and copying." *See United States v. RaPower-3, LLC*, 960 F.3d 1240, 1253 (10th Cir. 2020) (quoting Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment). Walmart argues that the Rule accordingly applies to both damages and "other monetary relief." Although Advisory Committee notes are "of weight" in interpreting the Rules, the notes cannot add to the Rule, *see Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316 (1988) (quoting *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 444 (1946)), and the text of the Rule makes no mention of "other monetary relief."

($200) for each aggrieved employee per pay period for each subsequent violation."  Cal. Lab. Code § 2699(f)(2).

Under state law, such penalties are not damages.  Indeed, the California Supreme Court has repeatedly differentiated between damages, either common law or statutory, which compensate for injuries, and PAGA civil penalties, which serve the distinct function of deterring and punishing violations of the Labor Code.  *See, e.g.*, *Arias*, 46 Cal. 4th at 985–87; *see also Canela*, 971 F.3d at 852.  This interpretation of the word "damages" accords with the ordinary legal usage of the term.  Black's Law Dictionary, for example, defines "damages" as "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury."  *Damages*, *Black's Law Dictionary* (11th ed. 2019).

Additionally, the text of Rule 26(a) specifies that parties must provide access to the documentation upon which any damage calculations are based, "including materials bearing on the nature and extent of *injuries* suffered."  Fed. R. Civ. P. 26(a)(1)(A)(iii)  (emphasis added).  This language indicates that the damage calculations required to be disclosed are focused on quantifying the compensation needed to redress a plaintiff's *injury*.  The portion of civil penalties distributed to the aggrieved employees in a successful PAGA suit do not qualify as "restitution for wrongs."  *Canela*, 971 F.3d at 852 (*Baumann*, 747 F.3d at 1123).  Instead, those penalties act as an "incentive to perform a service to the state," *id.* (quoting *Baumann*, 747 F.3d at 1123), and are provided without regard to the injuries suffered by individual employees.  The text of the Rule therefore demonstrates, in two distinct ways, that the Rule does not apply to civil penalties under PAGA.

Further, the Rule 26 requirement makes sense as applied to injuries suffered by the plaintiff, as the bulk of the

information concerning such injuries will often rest in the plaintiffs' hands. The Advisory Committee Notes to the 1993 Amendment of Rule 26 confirm that this rationale undergirds the Rule, as they state that "a party would not be expected to provide a calculation of damages which, as in many patent infringement actions, depends on information in the possession of another party or person." *See* Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment. Under PAGA, information regarding civil penalties would not be uniquely in the possession of the plaintiff. To the contrary, once a PAGA plaintiff discloses her theory of the case, all the information required to calculate PAGA penalties—e.g., the number of employees affected, the number of pay periods at issue, and the fixed penalty that attaches for proven each violation, *see* Cal. Lab. Code § 2699(f)(2)—would be in the hands of the employer. The underlying rationale for Rule 26 thus supports our conclusion that the Rule does not apply to PAGA civil penalties.

Application of an incorrect legal rule constitutes an abuse of discretion. *See United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc). As the foregoing analysis establishes that the district court improperly relied on Rule 26 to dismiss some of Hernandez's PAGA claims, its dismissal of those claims must be reversed as an abuse of discretion.

## CONCLUSION

For the reasons stated above, we **REVERSE** the district court's dismissal of Hernandez's PAGA claims and **REMAND** to the district court for further proceedings consistent with this opinion.